NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Albert M. ROBINSON,<br><br>                Plaintiff,<br>v.<br><br>STATE OF NEW JERSEY, MERCER COUNTY VICINAGE-FAMILY DIVISION, et al.,<br><br>                Defendants. | Civ. No. 11-6139<br><br>OPINION |

THOMPSON, U.S.D.J.

## I.    INTRODUCTION

This matter has come before the Court on the Amended Motion for Summary Judgment filed by Plaintiff Albert M. Robinson ("Plaintiff"),[1] (Docket Entry Nos. 60, 69), and the Cross-Motion for Summary Judgment filed by Defendants Sue Regan, Sandra Terry, and Douglas Meckel ("Defendants"), (Docket Entry No. 91).[2] Both motions are opposed. (Docket Entry Nos. 91, 96). The Court has decided the motions based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the following

---

[1] Anita Bhaggan-Robinson filed a motion to intervene on March 12, 2012. (Docket Entry No. 33). The motion was denied as moot on May 10, 2012, when the Court granted Defendants' motion to dismiss. (Docket Entry No. 51). When the case was re-opened following Plaintiff's appeal, the Court filed a letter order asking the parties to advise the Court as which matters they believed needed to be decided. (Docket Entry No. 57). Neither Plaintiff nor Bhaggan-Robinson renewed the motion to intervene; however, Plaintiff occasionally lists Bhaggan-Robinson as a party in his papers filed with this Court. (*See, e.g.,* Docket Entry Nos. 73, 79; *but see* Docket Entry Nos. 62, 67). As the motion to intervene has not been renewed, however, the Court does not consider Bhaggan-Robinson to be a party to this case.

[2] Defendant Superior Court of New Jersey, Mercer Vicinage, Family Division, incorrectly captioned as State of New Jersey, Mercer County Vicinage-Family Division, was dismissed by this Court under the Eleventh Amendment. (*See* Docket Entry No. 51).

1

reasons, Plaintiff's Amended Motion for Summary Judgment is denied and Defendants' Cross-Motion for Summary Judgment is granted.

## II. BACKGROUND

This case concerns a temporary restraining order ("the TRO") and a final restraining order ("the FRO") that were purportedly issued by the Superior Court of New Jersey, Mercer Vicinage, Family Division ("Mercer Family Court") in 1990 but that Plaintiff claims were actually forged in 2008. For the purposes of these motions, the Court assumes the parties' familiarity with the underlying facts of this case and briefly summarizes only those facts relevant to the Court's analysis.

Annette Howard ("Howard")[3] and Plaintiff are the parents of Erika Robinson ("Erika"); however, Plaintiff has never had custody of Erika. (Statement of Undisputed Material Facts, Docket Entry No. 91, Attach. 1 ("SUMF") at ¶¶ 1, 3).[4] On October 10, 1990, Erika's school notified Howard that Plaintiff had attempted to visit Erika at school and that Erika had become very upset as a result. (*Id*. at ¶¶ 4, 5).

The following day, Howard visited Mercer Family Court to obtain a temporary restraining order against Plaintiff. (*Id*. at ¶ 6). After completing a pre-court interview, Howard signed and filed a complaint that was then assigned the case number "FV-11-459-91E." (*Id*. at ¶¶ 8-35). This case ("the Domestic Violence Action") was then assigned to Judge Carchman, who issued the TRO on October 11, 1990. (*Id*. at ¶¶ 36-58). On October 24, 1990, Judge

---

[3] Annette Howard has since re-married and taken the name Annette Jushchuk; however, for the purposes of this motion, the Court refers to her as Annette Howard.
[4] As explained in greater detail below, Defendants' Statement of Undisputed Material Facts is deemed admitted for the purposes of these motions as Plaintiff has neither provided citations to the record in his own Statement of Uncontroverted Material Facts nor submitted a response to Defendants' Statement of Undisputed Material Facts. The Court, therefore, summarizes here the events described in Defendants' Statement of Undisputed Material Facts.

Smithson conducted a hearing in the Domestic Violence Action and issued the FRO against Plaintiff.  (*Id*. at ¶¶ 88-113).

It appears that service of process was made at Plaintiff's parents' home in Trenton, New Jersey because Howard did not know Plaintiff's address in Texas at the time she sought a restraining order.  (*Id*. at ¶¶ 14, 59-76).  Plaintiff contends, however, that he first learned of the FRO in 2009 as the result of a background check conducted during a firearms purchase.  (Am. Compl., Docket Entry No. 18 at ¶ 19).  According to Plaintiff, he was unable to complete the purchase as a result of the FRO against him.  (*Id*.).

Upon learning of the FRO, Plaintiff contacted Mercer Family Court, where he first came into contact with Defendants.  (SUMF, at ¶¶ 114-165).  During a conversation with Defendant Doug Meckel ("Meckel"), an employee of the court since 1999, Meckel explained that the FRO had been uploaded into the Federal Central Registry of the National Crime Information System, a nationwide, computerized information system managed by the FBI, in approximately December 2008.  (*Id*. at ¶¶ 151-165).  Since this information had only recently been added to the Federal Central Registry, background checks conducted prior to December 2008 would not have revealed the existence of the FRO.  (*Id*.).

Meckel also informed Plaintiff of the Family Automated Tracking System (FACTS), which Mercer Family Court began to use sometime after the FRO was issued in 1990.  (*Id*.).  He explained that thousands of cases had been back-loaded into FACTS, and some case files, including the Domestic Violence Action, were not comprehensive.  (*Id*.).  Furthermore, a number of records from the Domestic Violence Action had been destroyed in 2001 pursuant to Mercer Family Court's records retention policy.  (*Id*. at ¶¶ 78-87).

The other named Defendants served in supervisory positions during this time and had little personal involvement with Plaintiff or the Domestic Violence Action. Defendant Sandra Terry ("Terry"), who has served as the Family Division Manager of the Superior Court of New Jersey, Mercer Vicinage since 2009, received a single letter from Plaintiff that she referred to Meckel to handle. (*Id*. at ¶¶ 186-198). Defendant Sue Regan ("Regan") has served as a supervisor of the Division Managers since 2005 and has not had any involvement with Plaintiff or the Domestic Violence Action. (*Id*. at ¶¶ 224-26).

On November 13, 2009, Plaintiff successfully dissolved the FRO after a hearing by Judge William Anklowitz in the Domestic Violence Action. (*Id*. at ¶¶ 202, 218). Plaintiff has since initiated a number of lawsuits over the Domestic Violence Action and the resulting FRO. *See Howard v. Robinson*, No. 13-206 (D.N.J.); *Robinson v. New Jersey Attorney General*, No. 12-7861 (D.N.J.); *Robinson v. Meckel*, No. BUR-L-2133-12, Burlington Vicinage.

Plaintiff initiated this lawsuit on October 17, 2011. (Docket Entry No. 1). An amended complaint ("Amended Complaint") was filed on February 6, 2012, and lists a number of violations. (Docket Entry No. 18). Specifically, Plaintiff seeks relief against Defendants under Section 1983 for violations of the First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (*Id*.). Plaintiff also brings claims against Meckel and Terry for defamation, intentional infliction of emotional distress, and misappropriation of name. (*Id*.). Plaintiff also asserts claims against Meckel for common law fraud, negligence per se, and nuisance per se. (*Id*.). Finally, Plaintiff seeks a permanent injunction enjoining Defendants from forging another restraining order against him. (*Id*.).

After initiating this lawsuit, Plaintiff made a number of motions, including a motion for summary judgment, a motion for preliminary injunction, an amended motion for partial summary

judgment, a motion to appoint pro bono counsel, a motion to strike affidavits, and a motion for sanctions. (Docket Entry Nos. 13, 18, 19, 21, 32, 34). Additionally, Plaintiff's wife, Anita Bhaggan-Robinson, filed a motion to intervene. (Docket Entry No. 33).

Defendants then moved to dismiss the Amended Complaint. (Docket Entry Nos. 15, 49). On May 10, 2013, the Court granted Defendants' motion to dismiss, denied Plaintiff's motion for sanctions, and denied all remaining motions as moot. (Docket Entry No. 51). In granting Defendants' motion to dismiss, the Court concluded that (1) all Defendants in the case are immune from suit in their official capacities under the Eleventh Amendment; and (2) Plaintiffs claims are barred against Defendants in both their official and individual capacities pursuant to the Rooker-Feldman doctrine. (*Id.*). Plaintiff timely appealed the Court's decision, and on February 15, 2013, the Third Circuit affirmed in part and vacated in part, concluding that Plaintiff's claims were, in fact, not barred by the Rooker-Feldman doctrine. (Docket Entry No. 56).

Since the case was remanded on March 11, 2013, Plaintiff has filed a number of motions. First, Plaintiff filed an Amended Motion for Summary Judgment. (Docket Entry No. 60). He then filed a motion to amend on March 18, 2013, (Docket Entry No. 62), as well as a supporting brief and a "Third Amended Petition" on March 22, 2013, (Docket Entry Nos. 66, 67). Plaintiff then filed another Amended Motion for Summary Judgment and a Motion for Sanctions on March 25, 2013. (Docket Entry Nos. 69, 70). On April 2, 2013, Plaintiff also filed a Motion for Pro Bono Counsel and a Motion to Consolidate Cases. (Docket Entry Nos. 71, 72). Plaintiff then filed another memorandum in support of his motion to amend on April 1, 2013, (Docket Entry No. 73), and yet another memorandum and "Third Amended Petition" on April 15, 2013, (Docket Entry No. 79). This last filing was accompanied by a letter withdrawing Plaintiff's

5

previous filings related to his motion to amend and explaining that he intended to move forward with his most recent submission concerning amendment. (Docket Entry No. 80).

In response to the numerous filings and motions made by Plaintiff, Defendants moved on March 21, 2013, for an extension of time to respond to Plaintiff's Amended Motion for Summary Judgment and to file a cross-motion for summary judgment. (Docket Entry No. 65). Defendants request for an extension was granted on March 22, 2013. (Docket Entry No. 68). Defendants also filed a letter on April 18, 2013, requesting a case management conference as Defendants found it difficult to "present a complete cross-motion for summary judgment when [Plaintiff] bombards th[e] Court and Defendants with motions . . . ." (Docket Entry No. 81). In response to Defendants' letter, this Court entered an Order on April 22, 2013 ("April 22 Order"), directing the Clerk of the Court

> not to accept for filing any new case, proceeding, motion or other litigation document submitted by or on behalf of Plaintiff Albert M. Robinson or Movant Anita Bhaggan-Robinson, in a matter related to Defendants State of New Jersey, Mercer County Vicinage-Family Division, Sandra L. Terry, Doug Meckel, or Sue Regan without a written order of this Court . . . .

(Docket Entry No. 84).

Shortly thereafter, on April 25, 2013, the Court received a second Motion for Sanctions from Plaintiff, (*see* Docket Entry No. 86), which the Court directed the Clerk of the Court to file, (Docket Entry No. 85). The Court then denied Plaintiff's Motion to Consolidate Cases, (Docket Entry No. 83), and both of Plaintiff's motions for sanctions, (Docket Entry Nos. 87, 88). Plaintiff has appealed (1) the denial of the Motion to Consolidate Cases; (2) the April 22 Order requiring Plaintiff's filings to be screened and filed only with a Court order; and (3) the Court's decision to grant Defendants' request for an extension. (Docket Entry No. 89). This appeal currently awaits decision by the Third Circuit.

On May 15, 2013, Defendants filed a Cross-Motion for Summary Judgment. (Docket Entry No. 91). When Plaintiff did not submit opposition papers, the Court entered an order clarifying the April 22 Order. (Docket Entry No. 93). In this order, the Court explained that the April 22 Order did not preclude Plaintiff from responding to Defendants' motion and provided Defendant with an additional 14 days to respond to Defendants' Cross-Motion for Summary Judgment. (*Id.*). On July 1, 2013, Plaintiff filed such opposition. (Docket Entry No. 96). In his opposition, Plaintiff complained that the April 22 Order had denied him his "Right to file <u>any</u> documents . . . ." (*Id.*). Plaintiff also submitted a letter that similarly complained that the Court's order had prevented Plaintiff from filing any new documents or motions. (Docket Entry Nos. 101, 103). Once again, the Court issued a clarifying order that read:

> It is ORDERED that the clerk be and hereby is directed not to accept for filing any motion or other litigation document submitted by or on behalf of Plaintiff Albert M. Robinson in relation to Defendants State of New Jersey, Mercer County Vicinage-Family Division, Sandra L. Terry, Doug Meckel, or Sue Regan, in the above-captioned matter, without screening and an order by the Court.

(Docket Entry No. 99).

The Court then denied Plaintiff's motion for pro bono counsel on July 10, 2013, (Docket Entry No. 98), and Plaintiff's motion to amend on July 26, 2013, (Docket Entry Nos. 102, 103). The Court now considers the merits of Plaintiff's Amended Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable

7

substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 257.

In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." FED. R. CIV. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

## IV. ANALYSIS

The Court now turns to Plaintiff's Amended Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. The Court considers first whether these motions are ripe for decision as Plaintiff appears to contend that he has not had sufficient opportunity to respond to Defendants' motion. The Court then addresses the factual record, concluding that Defendants' Statement of Material Facts is deemed admitted by Plaintiff.

Finally, the Court weighs arguments by Plaintiff concerning the proper allocation of the burden of proof before turning to each of Plaintiff's claims to determine if summary judgment is proper.

   A. *Motions are Ripe for Review*

The Court finds it necessary to first address Plaintiff's complaint concerning the April 22 Order, which required Plaintiff's filings to first be screened by the Court, as Plaintiff appears to argue that it has precluded him from responding to Defendants' cross-motion. Specifically, Plaintiff contends that he was "barred from filing ANY motion including but not limited to a Motion to Strike the forged and conflicting affidavits of the Defendants and their witnesses and the forged FRO Complaint and pre trial interview."[5] (Docket Entry No. 96). However, the Court's April 22 Order required only that Plaintiff's filings be screened by the Court and docketed upon presentation of a Court order directing the clerk to accept the filing. Therefore, the April 22 Order was not a complete "denial of [Plaintiff's] Right (sic) to file <u>any</u> documents" as Plaintiff contends, a fact confirmed by the filing of Plaintiff's second motion for sanctions shortly after the April 22 Order was issued. Additionally, the Court is confident that any harm caused by Plaintiff's misreading of the April 22 Order has been cured, as the Court provided Plaintiff with an additional opportunity to oppose Defendants' Cross-Motion for Summary Judgment and Plaintiff did in fact submit such a response.

---

[5] Plaintiff also complains that
> the Court has barred [him] from filing a Motion for Sanctions against the Honorable Jeffrey S. Chiesa who, in direct violation of Rule 26(a)(3)(A)(i), wrote a letter by way of his Deputy Attorney General Ms. Janine Long, threatening [him] to back off trying to contact Ms. Howard and the rest of the affiants so that [he] could question them on their sworn testimony.

(Docket Entry No. 96 at 7). He explains that he "took Ms. Long's letter as an unmistakable threat of violence" because he is a minority, he believes Trenton law enforcement is corrupt, and there is, therefore, a "statistically proven high probability of violence under color of law." (*Id*. at 8, 10). The letter, however, contains no such threat. (Docket Entry No. 96, Attach. 1, Ex. C). In fact, the letter states only: "I request that you cease and desist from contacting Ms. Robinson and her supervisors. They are not obliged to speak with you and do not wish to speak with you." (*Id*.). More importantly, Plaintiff has never submitted such a motion for sanctions regarding the letter. Such a motion would have been screened and filed, just as Plaintiff's most recent motion for sanctions was filed. Instead, it appears that Plaintiff has elected not to file the motion and prefers instead to claim that the screening procedures serve as a complete bar to his filings, despite the Court's numerous clarifications to the contrary.

Plaintiff also complains that the Court "freely grant[s] Defendants more time to answer yet . . . has given [him] less than ten days to respond to the two inch thick Cross Motion for Summary Judgment complete with fake affidavits." (Docket Entry No. 96 at 2). The Court notes, however, that the order providing Plaintiff with a second opportunity to respond to Defendants' motion was signed and filed on June 12 and directed him to submit his opposition by June 26. (*See* Docket Entry No. 93). Therefore, Plaintiff was, in fact, given fourteen days to respond to Defendants' motion, a period longer than he would have been provided under the Local Rules. *See* L. CIV. R. 7.1(d). Furthermore, Plaintiff submitted no request for an extension. As such, the Court is assured that Plaintiff has had adequate opportunity to respond to Defendants' Cross-Motion for Summary Judgment and that these motions for summary judgment are ripe for decision.

B. *Defendants' Statement of Undisputed Material Facts Deemed Admitted*

Upon reviewing the parties' submissions, the Court deems admitted Defendants' Statement of Undisputed Material Facts. First, in moving for summary judgment, Plaintiff has failed to provide a statement of undisputed material facts that is supported by citations to the record. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the Court may . . . consider the fact undisputed for the purposes of the motion . . . ." FED. R. CIV. P.

56(e)(2). Although Plaintiff has provided a "Statement of Uncontroverted Facts" in support of his Amended Motion for Summary Judgment, (Docket Entry No. 60, Attach. 2), he has not supported those factual assertions with citations to materials in the record as required by Rule 56(c)(1). In fact, Plaintiff has provided no depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials in support of his allegations.

Furthermore, Plaintiff has not opposed the Statement of Undisputed Material Facts submitted by Defendants in support of their Cross-Motion for Summary Judgment. Local Rules require an "opponent of summary judgment [to] furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to affidavits and other documents submitted in connection with the motion . . . ." L. CIV. R. 56.1. The Local Rules further provide that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id*. Here, Plaintiff has not provided such a responsive statement of material facts. Therefore, as Plaintiff has failed to provide evidentiary support for his allegations in moving for summary judgment and has also failed to oppose Defendants' Statement of Material Facts, the Court deems admitted Defendants' Statement of Undisputed Material Facts for the purposes of these motions.

Plaintiff makes a number of arguments in an attempt to discredit Defendants' Statement of Material Facts, which the Court pauses to address at this time. In particular, Plaintiff points to several inconsistencies in Defendants' affidavits and supporting documents. First, Plaintiff points to an inconsistency in Meckel's affidavits. Meckel initially certified that he first spoke to Plaintiff on August 8, 2009. (Docket Entry No. 96, Attach. 1, Ex. E at ¶ 5). Defendants later

provided a second corrected affidavit, however, that states that Meckel "first spoke with [Plaintiff] on approximately September 8, 2009, and not on August 8, 2009 . . . ." (Docket Entry No. 96, Attach. 1, Ex. F at ¶ 5). As Defendants have certified that the correct date was, in fact, September 8, 2009, the Court finds no evidence to suggest this is any more than an attempt to correct a scrivener's error.

Plaintiff also points to a mistake in the certification of Ellie Ball ("Ball"), another Mercer Family Court employee. Plaintiff contends that Ball "swore under penalty of perjury that on August 24, 1990, which is approximately 61 days prior to October 24, 1990 the date that the FRO was allegedly issued on, she sent [Plaintiff] a copy of the TRO and FRO." (Docket Entry No. 96 at 6). Context suggests, however, that the reference to the year 1990 is merely a scrivener's error. The paragraphs immediately preceding the reference reveal that the certification was describing how Ball mailed a copy of the TRO and FRO to Plaintiff on August 24, 2009, not 1990. (Docket Entry No. 91, Attach. 5 at ¶¶ 14-15). Furthermore, Defendants provided a supplemental certification from Ball in which she states that she mailed the TRO and FRO to Plaintiff in 2009, and not in 1990, as her certification erroneously stated. (Docket Entry No. 97, Attach. 3). Therefore, having reviewed Plaintiff's arguments seeking to discredit Defendants' evidence, the Court concludes that they are without merit and certainly do not present a genuine issue of material fact that would preclude summary judgment.

> C. *Bubble Bursting Doctrine Has No Application to the Present Case as Defendants Are Not Entitled to a Presumption that the FRO is Authentic*

In arguing in favor of summary judgment,[6] Plaintiff first contends that Defendants bear the burden of proof. (Docket Entry No. 69 at 3). He reaches this conclusion by arguing that under the bursting bubble doctrine, "once opposing counsel talked to Judge Smithson and Ms.

---

[6] Plaintiff seeks an order for "partial summary judgment" on Plaintiff's defamation, negligence per se, appropriation of name, intentional infliction of emotional distress, and Section 1983 claims. (*Id*. at 6).

Howard and . . . found out that there were no court records concerning, or even mentioning, the FRO from 1990 until its creation in 2008 by the defendants the presumption that the FRO was authentic should have disappeared . . . ." (*Id*.). He argues that, therefore, he need not provide proof to support his motion because "[w]hen the nonmovant bears the burden of proof at trial, the movants do not need to support their motion with proof negating the nonmovant's claim." (*Id*. (citing *Celotex*, 477 U.S. at 587).

Plaintiff's contention that Defendants must prove that the FRO was not forged must fail. First, Plaintiff's argument appears to be premised on a misunderstanding of the term "presumption." A "presumption affords a party, for whose benefit the presumption runs, the luxury of not having to produce specific evidence to establish the point at issue." *Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998). Therefore, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." FED. R. EVID. 301. Under the bubble bursting theory, "a presumption is not merely rebuttable but completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020) (Fed. Cir. 1992) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1980)).

In this case, however, the bubble bursting doctrine does not apply as Plaintiff is mistaken in his belief that Defendant receives the benefit of a presumption that the FRO is authentic. The fact that a plaintiff must prove the elements of his claims by a preponderance of the evidence simply does not confer on a defendant a presumption that any fact is true. Furthermore, the fact that a plaintiff opposing a motion for summary judgment must produce evidence or point to evidence in the record from which a reasonable jury could find that his claims are substantiated

13

similarly does not create a presumption for the defendant. As such, the bubble bursting doctrine is not applicable in this case, and Plaintiff bears the burden of proving the elements of his claims at trial and must produce sufficient evidence to demonstrate a genuine issue of material fact at the summary judgment stage.

Having concluded that the bubble bursting doctrine does not apply, the Court now considers whether a genuine issue of material fact exists to preclude summary judgment as to each of Plaintiff's claims.

*D. Section 1983 Claims*

The Court addresses first Plaintiff's Section 1983 claims against Meckel, Terry, and Regan for violations of his First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Docket Entry No. 18 at ¶¶ 50-53). In the Amended Complaint, Plaintiff explains that these rights were infringed when Defendants "illegally used the identity of Ms. Howard to create a fraudulent TRO and FRO" and then "submitted the fraudulent TRO and FRO into (sic) the Central Registry . . . ." (Docket Entry No. 18 at ¶¶ 50-53).

A number of these claims, however, appear to be without any basis. In particular, it is not clear how the alleged forging of the FRO infringed Plaintiff's First, Fourth, Fifth, Sixth, or Eighth Amendment rights. The First Amendment protects the freedom of speech, religion, and press, rights that do not appear to be implicated by Plaintiff's unsupported allegations. U.S. Const. amend. I. Similarly, as Plaintiff has not alleged facts concerning a search or a seizure, the Fourth Amendment does not appear to be implicated either.[7] *See* U.S. Const. amend. IV. Furthermore, as Plaintiff's charges do not pertain to a criminal prosecution or the imposition of a punishment, Plaintiff has no basis to proceed under either the Sixth or Eighth Amendments. *See*

---

[7] Plaintiff claims that Defendants forged the FRO for the purpose of having him arrested but does not contend that such an arrest actually occurred. (Docket Entry No. 18 at ¶ 83).

U.S. Const. amends. VI, VIII. Finally, although Plaintiff's claims raise due process concerns, the Fifth Amendment applies only to actions taken by the federal government, not the state, and thus, is not implicated by this case. U.S. Const. amend. V; *see, e.g., Schweiker v. Wilson*, 450 U.S. 221, 227 (1981). Regardless, even if Plaintiff's allegations were sufficient to raise these claims, Plaintiff has provided no evidence to demonstrate that a genuine issue of material fact exists. As such, Defendants are entitled to summary judgment on these claims.

Turning to Plaintiff's Second and Fourteenth Amendment claims, the Court finds that summary judgment is also appropriate. Both claims require Plaintiff to show that the FRO was forged. Having deemed admitted Defendants' Statement of Material Facts, however, there is no genuine issue as to the authenticity of the FRO. Plaintiff simply has provided no evidence from which a reasonable jury could find that the FRO was forged. As such, Defendant has shown that no genuine issue of material fact exists as to Plaintiff's Second and Fourteenth Amendment claims.

E. *Defamation, Intentional Infliction of Emotional Distress, and Misappropriation of Name Claims*

Plaintiff also asserts claims against Meckel and Terry for defamation, intentional infliction of emotional distress, and misappropriation of name. (Docket Entry No. 18). Specifically, Plaintiff claims that these violations occurred when Meckel and Terry fraudulently published the FRO via the Federal Central Registry. (*Id.*). To succeed on each of these claims, therefore, Plaintiff must prove that the FRO was fraudulent. The record reveals, however, that Plaintiff was the properly named defendant in the Domestic Violence Action in which Judge Smithson issued the FRO and that Terry and Meckel did not forge the document. As such, Terry and Meckel cannot be said to have published a false and defamatory statement about Plaintiff, intentionally inflicted emotional distress through extreme or outrageous conduct, or

15

misappropriated Plaintiff's likeness in any way. As there is no evidence from which a reasonable jury could return a verdict for Plaintiff, Meckel and Terry have shown that no genuine issue of material fact exists as to Plaintiff's defamation, intentional infliction of emotional distress, and misappropriation of name claims.

F. *Common Law Fraud, Negligence Per Se, and Nuisance Per Se Claims*

Plaintiff also asserts claims against Meckel for common law fraud, negligence per se, and nuisance per se. (Docket Entry No. 18). First, Plaintiff's common law fraud claim is predicated on Plaintiff's allegations that Meckel represented to Plaintiff that there was an FRO against him and made this representation knowing it was false. (*Id*.). Plaintiff claims that Meckel intended for Plaintiff to rely on that representation and that he was forced to make many changes in his life as a result, including abstaining from speaking to his daughter and relinquishing control of his firearms. (*Id*.). As the record reveals that the FRO was not forged, however, the Court finds no evidence that Meckel made a false representation to Plaintiff. As such, Defendants have shown that no genuine issue of material fact exists concerning Plaintiff's common law fraud claim and Defendants are entitled to summary judgment.

Plaintiff's negligence per se claim must also fail. Plaintiff asserts that Meckel "violated Statutes 241, 242, 1512(b), 1519, 1343, 1028(7) and the statutes for bribery." (*Id*.). Again, these allegations are premised on the notion that Meckel forged the FRO and accepted a bribe; however, the record reveals no genuine issue as to the authenticity of the FRO and no facts to support Plaintiff's contention that Meckel accepted a bribe. As such, Meckel is entitled to summary judgment on Plaintiff's negligence per se claim.

Finally, Plaintiff asserts a claim of nuisance per se against Meckel. It is not clear from reviewing Plaintiff's Amended Complaint or summary judgment filings whether Plaintiff intends

16

to assert a claim for public or private nuisance. Regardless, summary judgment in favor of Defendants is appropriate. First, there can be no private nuisance claim because Plaintiff does not contend nor is there any evidence to show that Meckel interfered with his interest in the private use and enjoyment of land. *See James v. Arms Tech., Inc.*, 359 N.J. Super. 291, 329 (2003). Furthermore, there can be no public nuisance claim either. Such a claim would require evidence that Meckel forged the FRO and Plaintiff has put forth none. As such, Defendants have shown that there is no issue of genuine material fact concerning Plaintiff's fraud, negligence per se, and nuisance per se claims.

*G. Punitive Damages*

Punitive damages are warranted where "the defendant's conduct [was] wantonly reckless or malicious." *Maiorino v. Schering-Plough Corp.*, 302 N.J. Super. 323, 252 (N.J. Super. Ct. App. Div. 1997), *cert. denied*, 152 N.J. 189 (1997). "There must be an intentional wrongdoing in the sense of an 'evil-minded act' . . . ." *Id*. Here, where the record shows Defendants did not forge the FRO, punitive damages are clearly not warranted.

*H. Permanent Injunction*

Finally, Plaintiff seeks a permanent injunction to prevent Defendants from issuing another forged restraining order against Plaintiff. Injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988), *cert. denied*, 115 S. Ct. 1838 (1995). In determining whether to issue an injunction, courts consider (1) the likelihood of success on the merits; (2) the extent that plaintiff is irreparably harmed by the conduct complained of; (3) the extent the defendant will suffer irreparable harm if the preliminary relief

17

is issued; and (4) the public interest. *Am. Tel. & Tel. Co.*, 42 F.3d at 1427. "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1137, 1146 (3d Cir. 1982).

Here, injunctive relief is not warranted. As discussed at length above, Plaintiff simply cannot show a likelihood of success on the merits. Furthermore, Plaintiff cannot demonstrate irreparable injury. Irreparable injury "must be of a peculiar nature and incapable of pecuniary measurement." *Boretsky v. Corzine*, Civ. No. 08-2265, 2009 WL 1312701, at *5 (D.N.J. May 11, 2009) (internal citations omitted). Furthermore, the irreparable injury must be clearly shown to be immediate, as "an injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Id.* Here, even if Plaintiff could show a likelihood of success on the merits, Plaintiff's fear that Defendants will at some point issue another forged restraining order against him is simply too speculative and remote to warrant injunctive relief.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Motion for Summary Judgment, (Docket Entry Nos. 60, 69), is denied, and Defendants' Cross-Motion for Summary Judgment, (Docket Entry No. 91), is granted. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: August 12, 2013